NO. 4-01-0632 

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

STEPHANIE DICKSON, Individually and on Behalf of all Others Similarly Situated,

Plaintiff-Appellant,

v.

WEST KOKE MILL VILLAGE PARTNERS, a Partnership, 

Defendant-Appellee.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Sangamon County

No. 98L57

Honorable

Leslie J. Graves,

Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff, Stephanie Dickson, appeals from the summary judgment entered in the circuit court of Sangamon County in favor of defendant, West Koke Mill Village Partners, on the basis that the cause of action was moot.  The trial court declined to consider plaintiff's motion for class certification because plaintiff's claim was moot.  We consider the propriety of the summary judgment 
de
 
novo
 (
Jackson v. Graham
, 323 Ill. App. 3d 766, 779, 753 N.E.2d 525, 536 (2001)) and review the ruling on the class certification under an abuse of discretion standard (see 
AG Farms, Inc. v. American Premier Underwriters, Inc.
, 296 Ill. App. 3d 684, 694, 695 N.E.2d 882, 890 (1998)).  We reverse and remand.

Plaintiff filed her original complaint on February 10, 1998, an amended complaint on October 7, 1998, and a second-amended complaint on January 7, 1999.  In each of the complaints, plaintiff sought to recover damages for defendant's violation of the Security Deposit Interest Act (Act) (765 ILCS 715/0.01 through 3 (West 1996)), plus costs and attorney fees for defendant's alleged failure to pay the lessees of its apartments interest on their security deposits within 30 days after the end of each 12-month rental period.  Plaintiff filed this action on behalf of a class consisting of all persons who (1) had been tenants of the West Koke Mill Village Apartments within five years prior to the filing of the complaint, (2) had provided defendant with a security deposit, (3) were not in default of their leases, and (4) were not paid interest on their security deposits within 30 days of their annual lease anniversary dates.  Plaintiff filed a motion for class certification on April 13, 1998.

On June 7, 1999, the trial court granted defendant's motion to dismiss plaintiff's second-amended complaint to the extent that the prayer for relief improperly sought the assessment of multiple yearly penalties rather than a single statutory penalty, denied the remainder of defendant's motion to dismiss, and directed defendant to answer the second-amended complaint.  Defendant filed its answer to the second-amended complaint on June 18, 1999, and a motion for summary judgment on February 23, 2001.  Attached to the motion for summary judgment was the January 19, 2001, affidavit of Dennis McEvoy, defendant's managing partner. 

McEvoy's affidavit stated that plaintiff was a tenant of defendant's apartments from March 1991 through October 1997; on November 5, 1997, defendant sent plaintiff a check for $475 as repayment for her initial security deposit minus a $50 cleaning charge (a copy of the cover letter accompanying the check was attached to the affidavit as an exhibit); on November 11, 1997, plaintiff's attorney called apartment manager Pam Calhoun demanding that interest be paid on the amount of the security deposit; three days later, Calhoun sent plaintiff a check for $134.96, equally 6 1/2 years of interest; on November 19, 1997, Calhoun sent a letter to plaintiff's attorney, David Patrick Hall, informing him of defendant's efforts to calculate interest and contact plaintiff (exhibit No. 2 to the affidavit); on November 13, 1997, Calhoun sent a letter to plaintiff documenting defendant's calculations of the interest owed on the $525 security deposit (exhibit No. 3 of the affidavit) (a copy of the $134.96 check to plaintiff attached to the November 13, 1999, letter from Calhoun showed that the check was dated November 14, 1997); also on November 13, 1997, Hall wrote a letter to defendant's attorney, Brad Huff, demanding six times the amount of the security deposit ($3,150) plus $260 in attorney fees (exhibit No. 4 to the affidavit); and both defendant's $475 and $134.96 checks to plaintiff cleared defendant's bank prior to March 23, 1998.  McEvoy's affidavit further stated that, after the interest issue was brought to defendant's attention, defendant immediately began sending security deposit interest checks to previous and current tenants.  On December 23, 1997, defendant paid interest to tenants who had moved out in 1997 and left a forwarding address.  Of the 49 checks issued on December 23, 1997, 47 checks were accepted and cashed within 30 to 45 days, one cleared the bank in July 1998, and the other was voided due to lapse of time.  On February 13, 1998, defendant issued interest checks to all current tenants in good standing with their leases.  Of the 69 interest checks tendered, 63 were accepted and cashed and six were voided due to lapse of time.  According to McEvoy's affidavit, each year thereafter, defendant issued interest checks within 30 days of the anniversary date to the tenants in good standing with their leases.  The November 13, 1997, letter from Calhoun to plaintiff demonstrated that interest on the security deposit was calculated at 5% in 1991, 1992, and the first eight months of 1993.  For the last four months of 1993, all of 1994, and all of 1995, it was calculated at 3%.  In 1996, and for the 10 months in 1997, interest was calculated at 2.3%.

Also attached to the motion for summary judgment was a February 17, 1998, letter from Hall to Huff thanking him for the interest payment check but informing Huff that it did not affect plaintiff's demand for damages and attorney fees.

On February 25, 2000, plaintiff filed an amended motion for class certification.  On April 3, 2000, defendant filed its objection to plaintiff's amended motion for class certification.

In opposition to the motion for summary judgment, on February 21, 2001, plaintiff filed an affidavit of her attorney, Adam M. Berger, that stated plaintiff was unable to respond to the motion for summary judgment because defendant had not complied with court orders to provide plaintiff with documents that defendant claimed to have in its possession, including copies of all the checks referred to, copies of the original leases of all tenants referred to, a list of tenants who did not cash their interest payment checks, copies of all requests by tenants for the return of security deposits and interest to be paid on security deposits, and all documents previously requested in a request to produce.  On February 21, 2001, the trial court conducted a hearing on defendant's motion for summary judgment and plaintiff's motion for class certification.  At that hearing, plaintiff raised the inability to respond to the motion for summary judgment because of the failure of defendant to produce documents.  The trial court continued the hearing with the provision that documents would be provided in the interim.  Following the hearing, defendant filed copies of the fronts and backs of each check referred to in the motion for summary judgment, McEvoy's affidavit, and Berger's counter-affidavit.  Also produced were copies of the November 5, 1997, letter to plaintiff enclosing the $475 check and the November 19, 1997, letter to plaintiff with an attached copy of the invoice for the $50 cleaning charge.

On March 21, 2001, plaintiff filed a memorandum in opposition to defendant's motion for summary judgment and a statement of material facts in opposition to defendant's motion for summary judgment.  Attached to these documents was the affidavit of plaintiff.  In her affidavit, plaintiff stated that she leased an apartment from defendant for 6 1/2 years ending around October 31, 1997; at the time she signed the lease, she paid a $525 security deposit; she was not in default on the lease at the end of any 12-month rental period; she did not receive a cash refund or credit for interest accruing on the security deposit at the end of any 12-month period during her tenancy with defendant; on November 14, 1997, Hall sent a letter to defendant's attorney on her behalf demanding statutory damages, court costs, and attorney fees for defendant's failure to pay or credit interest accruing on the security deposit; and she had not received any damages for defendant's failure to pay or credit interest accruing on the security deposit.  Attached to the affidavit as an exhibit was Hall's November 14, 1997, letter to Huff.  Attached as a further exhibit were the copies of the checks defendant had disclosed in discovery, a copy of one page of the lease covenant, and agreements between plaintiff and defendant that included the paragraph relating to security deposits.

On April 4, 2001, defendant filed its reply to plaintiff's documents in opposition to summary judgment.  The hearing on the motions was held on May 25, 2001.  On June 26, 2001, the trial court entered an order reciting that it considered arguments of counsel, granting defendant's motion for summary judgment, and declining to consider plaintiff's motion for class certification.

On appeal, plaintiff argues that she is still entitled to statutory penalties under the Act and, therefore, defendant was not entitled to summary judgment.  Summary judgment is proper when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law; the right of the moving party to judgment must be "'clear and free from doubt.'"  
Schillerstrom Homes, Inc. v. City of Naperville
, 198 Ill. 2d 281, 280, 762 N.E.2d 494, 496-97 (2001), quoting 
Purtill v. Hess
, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986).  

In this case, there is no dispute that the Act applies.  The principal question to be determined is whether plaintiff is entitled to more under the Act than simply a belated payment of the accrued interest.  

During the period of plaintiff's lease from March 1991, to August 20, 1993, section 1 of the Act required lessors of residential real property containing 25 or more units in either a single building or a complex of buildings located on contiguous parcels of real estate who received a security deposit from a lessee to secure the payment of rent or compensation for damage to the property to pay interest at 5% from the date of deposit on any security deposit held for more than six months.  765 ILCS 715/1 (West 1992).  Effective August 20, 1993, Public Act 88-449 (Pub. Act 88-449, §5, eff. August 20, 1993 (1993 Ill. Laws 3466, 3467)) amended section 1 of the Act to provide that interest be calculated "at a rate equal to the interest paid by the largest commercial bank, as measured by total assets, having its main banking premises in this State on minimum deposit passbook savings accounts as of December 31 of the calendar year immediately preceding the inception of the rental agreement."  See 765 ILCS 715/1 (West 1994).  At all times relevant to this case, section 2 of the Act provided as follows:

"The lessor shall, within 30 days after the end of each 12 month rental period, pay to the lessee any interest, by cash or credit to be applied to rent due, except when the lessee is in default under the terms of the lease.

A lessor who willfully fails or refuses to pay the interest required by this Act shall, upon a finding by a circuit court that he has willfully failed or refused to pay, be liable for an amount equal to the amount of the security deposit, together with court costs and reasonable attorney's fees."  765 ILCS 715/2 (West 1996).

These statutes are not ambiguous.  Under the terms of section 2 of the Act, the lessor has 30 days from the end of each 12-month rental period to pay interest on the security deposit, by cash or credit applied to the rent.  If the lessor wilfully fails or refuses to pay the interest, the lessor will be liable for an amount equal to the security deposit, plus court costs and attorney fees.  
Gittleman v. Create, Inc.
, 189 Ill. App. 3d 199, 203, 545 N.E.2d 237, 240 (1989).

In this case, it is undisputed that defendant did not pay the interest on the plaintiff's security deposit within 30 days of any 12-month period during plaintiff's lease.  Plaintiff's affidavit stated that she was not in default on the lease at the end of any 12-month rental period.  Plaintiff relies on the fact that defendant never tendered to plaintiff an amount equal to plaintiff's security deposit as a statutory penalty.  Under section 2 of the Act, plaintiff becomes entitled to such payment upon the expiration of the 30 days following any one of the 12-month rental periods for which defendant did not pay statutory interest on the security deposit.  765 ILCS 715/2 (West 1996).  There is no issue in this appeal, and we do not decide, whether a lessee is entitled to only one such penalty under the Act.  In any event, plaintiff is entitled to recovery pursuant to the statute, plus court costs and attorney fees, provided she can prove defendant's failure to pay interest was wilful, a material question of fact that remains to be resolved.  Accordingly, defendant was not entitled to judgment as a matter of law, and the trial court improperly granted summary judgment in favor of defendant.

We agree with defendant's assertion that, when a named defendant has unconditionally tendered the full amount owed to plaintiff prior to suit being filed, and before any reasonable attorney fees have been incurred and no aggravating factors giving rise to punitive damages have occurred, there remains no actual controversy, suit should not have been filed, and the plaintiff to whom the tender is made would not be a proper class representative.  See 
Hayman v. Autohaus On Edens, Inc.
, 315 Ill. App. 3d 1075, 1077-79, 734 N.E.2d 1012, 1014-15 (2000).  However, at no time prior to or during the pendency of this action has defendant tendered to plaintiff the full amount alleged to be owed under the Act.

We have reviewed the principles discussed in defendant's cited case of 
Arriola v. Time Insurance Co.
, 323 Ill. App. 3d 138, 143-52, 751 N.E.2d 221, 225-32 (2001).  Those principles do not support the award of summary judgment in this case or the refusal to consider plaintiff's motion for class certification based solely on the fact that defendant tendered and plaintiff accepted the interest payment on the security deposit prior to this lawsuit being filed.  Moreover, the facts in 
Arriola
 are clearly distinguishable from the case at bar.  In 
Arriola
, the plaintiff did not file a motion to certify the class even though the trial court did not dismiss the complaint for 20 months after it was filed.  
Arriola
, 323 Ill. App. 3d at 151, 751 N.E.2d at 231-32.  In this case, plaintiff filed her original motion for class certification on April 13, 1998, 62 days after she filed her complaint on February 10, 1998.

In 
Gelb v. Air Con Refrigeration and Heating, Inc.
, 326 Ill. App. 3d 809, 822, 761 N.E.2d 265, 275 (2001), cited as additional authority by plaintiff, the court reversed the dismissal of the cause of action and remanded for consideration of the issue of class certification even though the full amount of the plaintiff's individual claim had been tendered prior to the motion for certification being filed.  We need not determine whether under similar facts we would apply the law as did the court in 
Gelb
.  As already noted, in this case, defendant never tendered the full amount claimed by plaintiff to be owed.  Accordingly, plaintiff's cause of action is not moot.  The trial court is also directed to address plaintiff's motion for class certification on remand.

The summary judgment entered by the circuit court of Sangamon County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

MYERSCOUGH and TURNER, JJ., concur.