2022 IL App (1st) 211189

FIRST DISTRICT
SIXTH DIVISION
June 30, 2022

No. 1-21-1189

| | | |
|---|---|---|
| LARRY KING, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 20 CH 04073 |
| GERBER REALTY, INC.; WILLIAM J. GERBER REALTY, LTD., d/b/a Gerber Real Estate; 3812 PINE GROVE, LLC; and GERBER MANAGEMENT, | ) ) ) ) ) | Honorable Eve Reilly, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Pierce concurred in the judgment and opinion.
Justice Oden Johnson concurred in part and dissented in part, with opinion.

## OPINION

¶ 1 Plaintiff, Larry King, appeals the judgment of the circuit court granting defendants' (Gerber Realty, Inc.; William J. Gerber Realty, Ltd., d/b/a Gerber Real Estate; 3812 Pine Grove, LLC; and Gerber Management) motion to dismiss his complaint, which alleged violations of the Residential Landlord and Tenant Ordinance of the Chicago Municipal Code (RLTO) (Chicago Municipal Code § 5-12-010 *et seq.* (amended Mar. 31, 2004)) and the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2018)). On appeal, plaintiff contends that the court erred in dismissing his complaint on the basis of the security deposit return agreement, where the agreement was procured by fraud and was also void for lack of consideration. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

No. 1-21-1189

¶ 2                                    I. JURISDICTION

¶ 3     On March 8, 2021, the trial court entered an order granting defendants' motion to dismiss with prejudice. Plaintiff filed a motion to reconsider, which the trial court denied on August 23, 2021. Plaintiff filed his notice of appeal on September 21, 2021. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 4                                   II. BACKGROUND

¶ 5     Plaintiff alleges the following facts in his complaint, which we take as true for purposes of reviewing a section 2-619 motion to dismiss. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008).

¶ 6     On August 2, 2013, plaintiff signed a contract to lease a unit in an apartment building located at 3812 Pine Grove in Chicago, Illinois. The lease term was for 12 months, ending on July 31 of the following year. The lease required plaintiff to provide defendants a security deposit of $700, which he paid. Plaintiff renewed his lease in 2014, 2015, 2016, 2017, 2018 and 2019. Attached to his complaint was the 2017 lease, which stated that a security deposit was "On File."

¶ 7     Defendants were landlords subject to RLTO (Chicago Municipal Code § 5-12-010 *et seq.* (amended Mar. 31, 2004)). Defendants, however, failed to attach the RLTO summaries to the 2017, 2018, and 2019 written leases in violation of section 5-12-170 of the RLTO (Chicago Municipal Code § 5-12-170 (amended Nov. 14, 2018)). Defendants also failed to give him credit or pay interest on his security deposit within 30 days after the end of the 2017-18 rental period, violating section 5-12-080(a)(1), (a)(3) (Chicago Municipal Code § 5-12-080(a)(1), (3) (amended

- 2 -

July 28, 2010)), and his lease did not list the address of the bank holding his security deposit in violation of subsection (b)(1) (*id*. § 5-12-080(b)).

¶ 8    In June 2019, "[d]efendants demanded all their tenants execute the standard form Security Deposit Return Agreement," hereinafter referred to as the "Release." The Release signed by plaintiff stated, in pertinent part:

"WHEREAS, tenant has paid a security deposit of $700.00 landlord seeks to return to tenant/s and tenant/s wish to receive from landlord;

That for $1, and other valuable consideration, the parties acknowledge is paid and received it is hereby AGREED as follows:

1. Landlord shall return in full to tenant/s the security deposit of $710.00.

2. Both parties WAIVE on behalf of themselves, their agents, assigns and heirs, any and all liability of any find [*sic*] whatsoever arising from any Federal, State or Municipal statute or ordinance which they may have against each other, their agents, assigns, heirs or attorneys, concerning the security deposit or its return.

3. All parties hereto have a full understanding of this agreement and the authority to sign and enter into this agreement."

¶ 9    According to plaintiff, defendants drafted the Release because they "were advised by their attorney around June 2019 that they were in violation of the RLTO concerning the security deposits of their tenants." Furthermore, defendants "purposefully" drafted the Release "so that Plaintiff and Defendants' other tenants would not be alerted to their RLTO rights." The Release made no reference to the RLTO, nor did it disclose defendants' violations or specify the liability waived by the tenant. Plaintiff "would not have signed the [Release] if [he] had been informed of the rights

and damages they were waiving by signing the agreement, and if not for the disparate bargaining power of the uninformed tenant compared to the informed landlord." Plaintiff also alleged that the Release was a breach of defendants' fiduciary duty to him because it was not in his best interest.

¶ 10 On May 4, 2020, plaintiff filed a four-count complaint against defendants. Count I stated that defendants failed to attach the RLTO summaries to the 2017, 2018, and 2019 written leases as required by section 5-12-170 of RLTO. Count I further stated that "[d]efendants' violation of 5-12-170 was not waived or released by the Security Deposit Return Agreement, [ ] because the requirement to attach the RLTO Summaries is not 'concerning the security deposit or its return," and in light of "the unfairness, deception and omission of material fact employed by Defendants."

¶ 11 In count II, plaintiffs claimed that defendants' failure to pay interest on security deposits violated section 5-12-080(c) of the RLTO. Plaintiff was not paid any interest on his security deposit "within 30 days after the end of each 12-month *** period" pursuant to the 2017 lease, which would have ended on August 30, 2018. Chicago Municipal Code § 5-12-080(c) (amended July 28, 2010). Under section 5-12-080(f) of the RLTO, plaintiff is entitled to damages "equal to two times the security deposit plus interest." Chicago Municipal Code § 5-12-080(f)(1) (amended July 28, 2010). Count II alleged that defendants' violation of section 5-12-080(c) was not waived by the Release in light of "the unfairness, deception and omission of material fact employed by Defendants."

¶ 12 Plaintiff requested judgment in his favor "for the amounts specified in" section 5-12-170 (count I) and section 5-12-080(f) (count II) of the RLTO, as well as attorney fees, litigation expenses, and costs pursuant to section 5-12-180 (Chicago Municipal Code § 5-12-180 (added Nov. 6, 1991)).

¶ 13     Counts III and IV alleged defendants' unfair and unscrupulous conduct in violation of the Consumer Fraud Act. Therein, plaintiff alleged that defendants drafted and offered a "one-sided agreement." Their conduct in doing so, and in omitting any reference to the RLTO or to the specific violations being waived by plaintiff, was deceptive and unscrupulous. By omitting this material information, defendants intended plaintiff to rely on their deception and sign the Release. The complaint sought compensatory and punitive damages, as well as attorney fees, litigation expenses, and costs.

¶ 14     Defendants filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)). Defendants argued that the complaint was "barred by the executed [Release]," in which plaintiff waived "all claims concerning the security deposit or the return of same relating to his tenancy." Defendants asserted that plaintiff "voluntarily accepted consideration and executed the Release" with a "full understanding" of the terms. Therefore, the release was "enforceable to bar this action." Defendants also disagreed that they owed a fiduciary duty to plaintiff. Without such a duty, defendants argued, plaintiff has no basis to claim that they had a duty to specify the causes of action waived by the release.

¶ 15     Alternatively, defendants argued that the complaint should be dismissed because plaintiff ratified the Release when he failed to return the $710 he was paid. Since plaintiff did not return the consideration he received, the Release barred his claims against them. Defendants contended that plaintiff's failure to attach the written leases for 2018 and 2019, in violation of section 2-606 of the Code (735 ILCS 5/2-606 (West 2018)), provided another potential basis for dismissal for those claims. They also argued that the two-year statute of limitations applicable to RLTO claims barred him from recovery for any violations occurring on or before July 31, 2019.

¶ 16    At the hearing on the motion, the trial court stated it was "a little bit confused" about defendants' motion. The trial court told defendants' counsel, "I'm not really following how this is a 2-615. Is this not a 2-619?" Counsel responded,

> "Perhaps we should have labeled it as a 619 then because of the statute of limitations, but I kind of saw it as, you can't even allege it because its nonexistent, we put it under 2-615.

> We also did not want to get into issues of having to attach an affidavit or anything. We just don't believe that you can have a basis when you have already been barred."

The court asked counsel, "So you are saying on the face of the pleadings, you can tell that it's time barred?" Counsel answered, "Yes."

¶ 17    Plaintiff's counsel disagreed. He argued that the claim for nonpayment of security deposit interest does not arise when the leases are executed but rather it arises 30 days after the end of each 12-month lease term. Plaintiff's counsel contended that "the only way that they can defeat the claim for interest is with the waiver agreement." When the trial court asked counsel why plaintiff's complaint should not be dismissed based on the Release, he responded that "[t]he release is invalid, and specifically when they took that security deposit, they had a fiduciary duty to the tenant. That release would violate that fiduciary duty."

¶ 18    After argument, the trial court granted the motion to dismiss with prejudice. The court's written order stated that it was "construing this 735 ILCS 5/2-615 motion as a 735 ILCS 5/2-619 Motion as the Court finds there is affirmative matter that defeats the claim." The motion was granted "based on the [Release] signed by Plaintiff and the absence of any fiduciary duty owed by the Defendants to Plaintiff."

¶ 19    Plaintiff filed a motion to reconsider, arguing that the Release was unenforceable because defendants owed a fiduciary duty to tenants concerning security deposits. Plaintiff also pointed out that the RLTO "mandates that no agreement may provide that the landlord or tenant 'agrees to waive or forego rights, remedies or obligations provided under this chapter.' " Therefore, "the prohibited [Release] agreement is unenforceable." He requested that the court deny defendants' motion to dismiss and grant his request for leave to amend his complaint to add a claim regarding defendants' attempts to enforce an agreement that improperly waived certain rights and remedies of plaintiff.

¶ 20    In response, defendants argued that the court was correct in finding no general fiduciary duty between a landlord and tenant. They noted that plaintiff raised a new argument concerning the RLTO's mandate that no agreement may waive or forgo a landlord's or tenant's rights, remedies, or obligations. Defendants posited that the mandate applied only to rental agreements and nothing in the RLTO prohibited a landlord and tenant from executing a mutual release outside of the lease agreement. They again maintained that the Release "was a release of all Plaintiff's claims including the release of his claim to interest on the security deposit." Defendants also argued, as they did in their motion to dismiss, that plaintiff ratified the Release by keeping the payment and the statute of limitations barred his claims.

¶ 21    After a hearing, the trial court denied plaintiff's motion to reconsider "for the reasons cited in the briefs and argued on the record." Plaintiff filed this appeal.

¶ 22                                    III. ANALYSIS

¶ 23    Before proceeding to the merits of this appeal, we first address the trial court's decision to treat defendants' section 2-615 motion to dismiss as a section 2-619 motion to dismiss. The court

was understandably confused where defendants' motion to dismiss was brought pursuant to section 2-615 but alleged affirmative matters that defeated plaintiff's claims such as the existence of a valid release, plaintiff's ratification of the release, and the statute of limitations. Such matters are properly raised in a section 2-619 motion to dismiss. See *Weisblatt v. Colky*, 265 Ill. App. 3d 622, 626-27 (1994) (finding that the existence of a valid release is an affirmative matter defeating plaintiff's claim); 735 ILCS 5/2-619(a)(5) (West 2018) (providing that the assertion a claim is barred by the statute of limitations is a matter properly raised in a section 2-619 motion to dismiss); *Cove Management v. AFLAC, Inc.*, 2013 IL App (1st) 120884, ¶ 37 (ruling that the trial court properly granted defendant's section 2-619(a)(9) motion to dismiss where plaintiff could not show that AFLAC ratified the lease or accepted its benefits). While such motions are generally improper, reversal is required only if prejudice results to the nonmovant. *Wilde v. First Federal Savings & Loan Ass'n of Wilmette*, 134 Ill. App. 3d 722, 729 (1985). Here, plaintiff did not object to the procedure, and he had the opportunity to make his argument against defendants' motion at the hearing and in his motion to reconsider. We find that plaintiff was not prejudiced by the error.

¶ 24    A dismissal pursuant to section 2-619(a)(9) is appropriate when a claim "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). The "affirmative matter" must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). Once defendants satisfy their initial burden of asserting the affirmative matter, the burden shifts to plaintiff, who must establish that the affirmative defense asserted either is "unfounded or requires the resolution of an essential element of material fact before it is proven." *Id.* at 116. Plaintiff may establish this by "affidavits or other proof." 735 ILCS

5/2-619(c) (West 2018).

¶ 25 A section 2-619 motion to dismiss admits as true all well-pleaded facts, along with all reasonable inferences that can be gleaned from those facts. *Porter*, 227 Ill. 2d at 352. In ruling on the motion, the trial court construes the pleadings and any supporting documentary evidence in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). When determining whether to grant dismissal pursuant to section 2-619, the trial court must consider whether the defendant has presented facts that constitute an affirmative defense that could defeat the plaintiff's cause of action. *Senesac v. Employer's Vocational Resources, Inc.*, 324 Ill. App. 3d 380, 385 (2001). Our review is *de novo*. *Porter*, 227 Ill. 2d at 352.

¶ 26 Count I of the complaint sought damages for defendants' failure to attach RLTO summaries to plaintiff's 2017, 2018, and 2019 written leases. Section 5-12-170 of the RLTO provides that "[t]he Commissioner of Housing shall prepare a summary of this chapter, describing the respective rights, obligations and remedies of landlords and tenants hereunder, and shall make such summary available for public inspection and copying." Chicago Municipal Code § 5-12-170 (amended Nov. 14, 2018). Relevant here, "[a] copy of such summary shall be attached to each written rental agreement when any such agreement is initially offered to any tenant or prospective tenant by or on behalf of a landlord and whether such agreement is for a new rental or a renewal thereof." *Id.* The section further provides that "[i]f a tenant in a legal proceeding against his landlord establishes that a violation of this section has occurred, he shall be entitled to recover $100.00 in damages." *Id.* Since section 5-12-170 "imposes automatic liability for a violation of its terms, sets forth a predetermined amount of damages, and imposes liability regardless of plaintiff's actual damages,

the provision is a 'penalty' " subject to the two-year limitations period in section 13-202 of the Code (735 ILCS 5/13-202 (West 2018)). See *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 15 (2009) (using this reasoning to find that section 5-12-080(f) of the RLTO is a "penalty" within the meaning of section 13-202).

¶ 27    Plaintiff's cause of action for failing to attach a summary of the ordinance accrued when each lease was offered to him. *Namur v. Habitat Co.*, 294 Ill. App. 3d 1007, 1013 (1998). Plaintiff's 2017 lease was dated July 30, 2017. Therefore, plaintiff had until July 30, 2019, to file his claim that defendants failed to attach the RLTO Summary to his 2017 lease. Plaintiff, however, filed his complaint on May 4, 2020, past the two-year limitation period. As such, the statute of limitations barred this claim.

¶ 28    Regarding his claims that defendants failed to attach the summaries to his 2018 and 2019 written leases, plaintiff failed to attach copies of the leases to his complaint. Section 2-606 of the Code provides that if a claim is based on a written instrument, that document "must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his or her pleading an affidavit stating facts showing that the instrument is not accessible to him or her." 735 ILCS 5/2-606 (West 2018). Plaintiff's complaint did not have an affidavit attached stating why the documents were unavailable. The failure to attach the 2018 and 2019 leases constituted proper grounds for dismissal of these claims. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 743 (2009).

¶ 29    We therefore affirm the trial court's dismissal of count I, which alleged defendants' failure to attach the RLTO summaries to plaintiff's 2017, 2018, and 2019 written leases. Although the trial court used a different rationale to dismiss this allegation, this court can affirm "on any basis

present in the record." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004).

¶ 30    Count II alleged that defendants failed to pay interest on plaintiff's security deposit "pursuant to Lease 2017," in violation of section 5-12-080(c) of the RLTO. Section 5-12-080(c) provides that "[t]he landlord [who holds a security deposit] shall, within 30 days after the end of each 12-month rental period, pay to the tenant any interest, by cash or credit to be applied to the rent due." Chicago Municipal Code § 5-12-080(c) (amended July 28, 2010). If the landlord fails to comply with this provision, "the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at a rate determined in accordance with Section 5-12-081." *Id.* § 5-12-080(f)(1).

¶ 31    Defendants contend that the executed Release barred this claim. The Release provided that plaintiff had paid defendants a security deposit of $700, and in exchange for the landlord's "return in full to tenant/s the security deposit of $710.00," plaintiff agreed to waive "any and all liability of any [kind] whatsoever *** concerning the security deposit or its return." The existence of a valid release is an affirmative matter defeating plaintiff's claim. *Weisblatt*, 265 Ill. App. 3d at 626-27.

¶ 32    Plaintiff, however, insists that section 5-12-140 of the RLTO forbids an agreement such as the Release because it allows defendants to "contract[ ] around their security deposit obligations." Section 5-12-140 states: "Except as specifically provided by this chapter, no rental agreement may provide that the landlord or tenant *** [a]grees to waive or forego rights, remedies or obligations provided under this chapter." Chicago Municipal Code § 5-12-140(a) (amended. Nov. 6, 1991). According to the provision's clear terms, it applies only to rental agreements. "Rental Agreement" is defined as "all written or oral agreements embodying the terms and conditions concerning the

use and occupancy of a dwelling unit by a tenant." Chicago Municipal Code § 5-12-030(h) (amended May 12, 2010). Plaintiff does not set forth how the Release "embod[ies] the terms and conditions concerning the use and occupancy of a dwelling unit." The Release contained no terms relating to plaintiff's use and occupancy of his unit, nor has he claimed that defendants required him to sign the Release as a condition of his occupancy. Since we find plaintiff's contention unpersuasive, we next determine whether the Release was enforceable.

¶ 33    A release must be based upon consideration, consisting of either some right, interest, or benefit accruing to one party, or some forbearance or detriment suffered or undertaken by the other. *White v. Village of Homewood*, 256 Ill. App. 3d 354, 356-57 (1993). Here, plaintiff was paid his security deposit plus $10 for his promise to waive all liability on the part of defendants "concerning the security deposit or its return." Plaintiff acknowledges that pursuant to the lease and the RLTO, he was entitled to the return of his $700 security deposit plus $.60 interest. He received $710 under the terms of the Release. "It is well settled that valid consideration exists for a release when a party promises not to file suit against another party in exchange for payment." *Rohr Burg Motors, Inc. v. Kulbarsh*, 2014 IL App (1st) 131664, ¶ 49. While plaintiff now argues that consideration for the release was insufficient when compared with defendants' potential liability under section 5-12-080, this court generally does not review the amount of consideration. *Hurd v. Wildman, Harrold, Allen & Dixon*, 303 Ill. App. 3d 84, 93 (1999). "Mere inadequacy of consideration, in the absence of fraud or unconscionable advantage, ordinarily is insufficient to justify setting aside a contract." (Internal quotation marks omitted.) *Id.*

¶ 34    Plaintiff does allege that defendants deceived and misled him into waiving his rights under the RLTO. However, nowhere does he claim that he returned the sums received under the Release.

One who retains the consideration for any considerable length of time, with knowledge of the fraud, ratifies the contract. *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 842 (1995).

> " 'A party cannot be permitted to retain the benefits received under a contract and at the same time escape the obligations imposed by the contract. If a releasor, therefore, retains the consideration after learning that the release is voidable, [his] continued retention of the benefits constitutes a ratification of the release.' " *Hurd*, 303 Ill. App. 3d at 93-94 (quoting *Seward v. B.O.C. Division of General Motors Corp.*, 805 F. Supp. 623, 632 (N.D. Ill. 1992)).

Accordingly, even if defendants had procured the Release through fraud, plaintiff ratified the contract by retaining the consideration he received.[1] Because plaintiff ratified the Release, we find that the trial court properly dismissed count II of plaintiff's complaint.

¶ 35    Counts III and IV of the complaint alleged violations of the Consumer Fraud Act, which the trial court also dismissed based on the signed Release. We are mindful that a release is a contract, and our primary objective in interpreting a contract is to give effect to the parties' intent. *Badette v. Rodriguez*, 2014 IL App (1st) 133004, ¶ 17. Liability release clauses, however, are disfavored. *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 412 (2007). Therefore, "[r]eleases are strictly construed against the benefitting party and must spell out the intention of the parties with great particularity." *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 614 (2007).

¶ 36    Here, plaintiff agreed to waive "any and all liability of any [kind] whatsoever ***

---

[1]The same reasoning applies to plaintiff's fiduciary duty argument. Even if defendants had violated a fiduciary duty owed to plaintiff in drafting the Release, plaintiff ratified the agreement by retaining the benefit after having knowledge of the violation.

concerning the security deposit or its return." Since defendants drafted and benefitted from the Release, we must strictly construe the terms of the Release against them. *Harris v. Walker*, 119 Ill. 2d 542, 548 (1988). Viewing the Release as such, we find that plaintiff's consumer fraud claims did not concern the security deposit or its return. Rather, plaintiff claimed that defendants' use of the Release itself was a deceptive and unscrupulous practice that offended public policy. Plaintiff sought compensatory and punitive damages for the defendants' deception that led him to sign the Release. Since the express terms of the Release applied only to liability "concerning the security deposit or its return," it did not bar plaintiff's consumer fraud claims. Therefore, we reverse the trial court's dismissal of counts III and IV pursuant to section 2-619(a)(9), based on the Release.

¶ 37                                    IV. CONCLUSION

¶ 38    For the foregoing reasons, we affirm the trial court's dismissal of counts I and II of plaintiff's complaint, but reverse dismissal of counts III and IV. We remand the cause for further proceedings thereon.

¶ 39    Affirmed in part and reversed in part; cause remanded.


¶ 40    JUSTICE ODEN JOHNSON, concurring in part and dissenting in part:

¶ 41    I concur with the majority's decision to reverse the dismissal of counts III and IV, and I also agree that our review is *de novo*. However, I must respectfully dissent from its decision to affirm the dismissal of counts I and II for reasons explained below.

¶ 42    The complaint has four counts: the first count concerned the landlord's failure to attach RLTO summaries; and the remaining three counts concerned the tenant's security deposit. The trial court entered a written order on March 8, 2022, dismissing the complaint in its entirety "based

on the Security Deposit [Return] Agreement signed by Plaintiff and the absence of any fiduciary duty owed by the Defendants to Plaintiff."[2]  Hereinafter, I refer to the agreement, which is entitled the "Security Deposit Return Agreement," as the Return Agreement; the majority calls it the "Release," although the word "Release" is nowhere in its title. Entitling it the "Release" skews the legal issues by making it seem as though the very title put plaintiff on notice that the document was a release of rights, when, in actuality, the document was entitled the far more benign "Return."

¶ 43                                          I. Count I

¶ 44     Count I of the complaint sought damages for defendants' failure to attach RLTO summaries to plaintiff's 2017, 2018, and 2019 written leases. The majority finds that the claim with respect to the 2017 lease is time-barred and that the claim with respect to the 2018 and 2019 leases is barred due to plaintiff's failure to attach the 2018 and 2019 leases to his complaint.[3]

¶ 45                                    A. 2018 and 2019 Claims

¶ 46     I agree with my colleagues that defendant's 2-615 motion to dismiss should have been brought pursuant to section 2-619 (see cases cited *supra* ¶ 23). However, the majority affirms by finding that the error did not prejudice plaintiff. I must respectfully disagree. The majority's finding itself shows the prejudice that plaintiff suffered. As the majority observes, under section 2-619, once a defendant satisfies its initial burden of asserting an affirmative matter defeating the claim, the burden shifts to the plaintiff who must establish that the affirmative defense is

---

[2]The trial court's August 23, 2021, order denying plaintiff's motion to reconsider stated only that plaintiff's motion was denied "for the reasons cited in the briefs and argued on the record." The record does not contain a transcript for the August 23, 2021, Zoom proceeding.

[3]These reasons were argued extensively by defendants to the trial court at the dismissal hearing. However, the trial court apparently did not find them persuasive because the dismissal was based solely on two findings:(1) the entire complaint was barred by the Return Agreement, and (2) the landlord owed no fiduciary duty to the tenant.

unfounded. *Supra* ¶ 24. The majority then affirms the dismissal—with prejudice—of count I with respect to the 2018 and 2019 leases because plaintiff failed to satisfy his burden by not attaching the leases.

¶ 47  Even though the trial court and the majority would cure a defect in the defendant's 2-619/2-615 motion to dismiss, they nonetheless would dismiss plaintiff's complaint with prejudice without the opportunity to cure. This complaint has never been amended, and plaintiff would not have an opportunity to even refile a new complaint as the dismissal was with prejudice and therefore barred by *res judicata*. For this court, in effect, to dismiss on this basis—when it was not given as a reason by the trial court, when amendments are liberally granted, and when the complaint had not been amended even once—I think is an abuse of our discretion and is highly prejudicial, and I must respectfully disagree. *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 39 ("Generally, amendments should be granted liberally."); *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 113 (2011) ("the general rule" is "that amendments should be granted liberally").

¶ 48  Plaintiff argues in his reply brief that this "error could have been easily amended by an amended complaint" and asks us, "at a minimum," to remand to the trial court on count I. The case cited *by defendant* does just that. In support of its argument that the failure to attach the 2018 and 2019 leases warrants dismissal, defendant cites in support *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296 (2010). However, in *Velocity*, this court vacated the lower court's judgment and remanded for further proceedings, in order to allow the plaintiff to produce and attach the missing document to its complaint. *Velocity*, 397 Ill. App. 3d at 300 ("defendant's motion to dismiss should have been granted without prejudice"). I agree with plaintiff, and the court in *Velocity*, that this is not a reason for dismissing this claim with prejudice at this time.

¶ 49                                    B. 2017 Claim

¶ 50    As for the 2017 claim, the majority finds that it is time-barred. Applying a 2-year statute of limitations, the majority observes that the 2017 lease was dated July 30, 2017, and "[t]herefore," plaintiff had until July 30, 2019, to file a claim that defendants failed to attach the RLTO Summary to the 2017 lease. *Supra* ¶ 27. Since plaintiff did not file until March 4, 2020, the majority finds the claim to be seven months too late.

¶ 51    In *Landis v. Marc Realty, LLC*, 235 Ill. 2d 1, 4 (2009), our supreme court held that a 2-year statute of limitations applied to a different RLTO section than the one at issue in count I. While the supreme court in *Landis* found a 2-year statute of limitations applied, it did not need to discuss the accrual date since the *Landis* suit was filed four years after the tenant had vacated the apartment. *Landis*, 235 Ill. 2d at 3. In the 1993 appellate court case of *Namur v. Habitat Co.*, 294 Ill. App. 3d 1007, 1013 (1998), cited by the majority,[4] the court considered the same RLTO section at issue here and found that a 2-year statute of limitations applied and that the accrual date "for failing to attach a summary of the ordinance" occurred "when the lease was offered to plaintiffs."[5] However, the *Namur* court expressly stated that it was *not* deciding whether, in general, this 2-year statute of limitations is tolled until a plaintiff discovers his or her cause of action. *Namur*, 294 Ill. App. 3d at 1014 ("[w]e do not need to decide whether the discovery rule applies to this cause of action" for other reasons). The whole point of attaching the RLTO summary

---

[4]*Namur* is persuasive but it is not binding authority. The majority does not discuss whether we should follow the almost 30-year-old appellate-court case that has not been cited once for this point in a published opinion.

[5]We note that the accrual date applied in *Namur* is actually earlier than the accrual date applied by the majority. The majority used the date of the lease as the accrual date (*supra* ¶ 27), while the accrual date in *Namur* was the date when the lease was first offered to plaintiff. *Namur*, 294 Ill. App. 3d at 1013.

is to inform the tenant who otherwise might not be aware of it. Thus, it does make some sense to toll the statute of limitations until the tenant becomes aware, despite the landlord's ordinance-violating failure to inform. However, the *Namur* court declined to decide the tolling issue because, in the case before it, there was no evidence at trial and no allegation in the complaint about the discovery date. *Namur*, 294 Ill. App. 3d at 1014. Thus, while finding a fairly regressive accrual date, the appellate court simultaneously held out the possibility of a broad tolling exception.

¶ 52    In contrast to the *Namur* case, which was posttrial, the case at bar is at a very different place on the procedural timeline. As a result, *Namur* does not serve as precedent for dismissing here, when the complaint has yet to be amended once and plaintiff could easily amend it to add an allegation about his discovery date. Where the trial court chose not to dismiss on this basis, and where plaintiff has yet to amend, I would not affirm a dismissal with prejudice on this basis at this time.[6] *Kopnick v. JL Woode Management Co.*, 2017 IL App 152054, ¶ 32 (the trial court abused its discretion by dismissing, with prejudice, the tenant's claim that the landlord failed to attach the required RLTO summary, where the claimed defect could have been easily cured by allowing the tenant to amend her complaint).

¶ 53    Lastly, in support of its finding that the failure to attach the 2018 and 2019 leases requires dismissal of these claims, the majority cites *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 743 (2009). However, the *Alpha* court affirmed the dismissal because the plaintiffs had failed to

---

[6] The majority also does not discuss whether the failure to provide the summary was a continuing violation during the year of the lease, such that plaintiff had until July 29, 2020, to file a claim. One could fathom good policy reasons for finding this to be a continuing violation, first and foremost being to give the landlord an incentive to ameliorate the error as soon as he or she noticed it.

attach documents to their "third amended complaint." *Alpha*, 391 Ill. App. 2d at 742-43. Thus, the *Alpha* case is not analogous to the case at bar, as plaintiff's complaint has yet to be amended once.

¶ 54                                    II. The Return Agreement

¶ 55     Turning to the reason given by the trial court for its dismissal with prejudice of all counts, the trial court stated that it was dismissing solely due to "the Security Deposit [Return] Agreement signed by Plaintiff and the absence of any fiduciary duty owed by the Defendants to Plaintiff." See *supra* ¶ 18. I do not find this reason persuasive, for reasons that I explain below.

¶ 56     Count II is the second of the two counts that the majority affirmed the dismissal of. This count alleges that defendant failed to pay the required interest on the tenants' security deposits. Plaintiff alleges that defendant owed (1) interest, plus the penalty of twice the security deposit, or $1400.60; (2) attorney fees and costs; and (3) the $700 security deposit, due at the end of the lease. However, with the Return Agreement, defendant paid only $1 in consideration and returned the $700 security deposit with $10 in interest. Defendant argues that the Return Agreement preempts count II, and the majority finds this argument persuasive.

¶ 57     However, section 5-12-140 of the RLTO expressly forbids agreements, such as the Return Agreement, by which a landlord gets a tenant to waive or forgo his or her rights under the RLTO. Section 5-12-140 provides: "Except as specifically provided by this chapter, no rental agreement may provide that the landlord or tenant *** [a]grees to waive or forego rights, remedies or obligations provided under this chapter." Chicago Municipal Code § 5-12-140(a) (amended Nov. 6, 1991). This section emphatically and unambiguously states that "no" rental agreement may affect such a waiver. Chicago Municipal Code § 5-12-140(a) (amended Nov. 6, 1991).

¶ 58   Interpreting this section, the majority finds that the Return Agreement was not a modification of the existing rental agreement and, thus, this prohibition does not apply. A "[r]ental agreement" is defined as "all written or oral agreements embodying the terms and conditions concerning the use and occupancy of a dwelling unit by a tenant." Chicago Municipal Code § 5-12-030(h) (amended May 12, 2010). The majority finds that the Return Agreement did not embody terms and conditions concerning use and occupancy and, therefore, it was not a modification of a rental agreement.

¶ 59   I must respectfully disagree. The security deposit[7] *is* a term and condition concerning the use and occupancy of a rental unit. For example, section 5-12-080(a)(3) provides that "[t]he name and address of the financial institution where the security deposit will be deposited shall be clearly and conspicuously disclosed in the written *rental agreement* signed by the tenant." (Emphasis added.) Chicago Municipal Code § 5-12-080(a)(3) (amended July 28, 2010). The Return Agreement at issue purported to waive this obligation to clearly and conspicuously disclose on the face of the rental agreement where the security deposit will be deposited. The Return Agreement thereby altered or modified the required terms of the written rental agreement itself and did so for the express purpose of waiving or foregoing rights bestowed by the Chicago Municipal Code. It would be hard to think of a more direct violation of section 5-12-140(a). See Chicago Municipal Code § 5-12-140(a) (amended Nov. 6, 1991).

---

[7]The RLTO does not define the term "security deposit." *Steenes v. MAC Property Management, LLC*, 2014 IL App (1st) 120719, ¶ 20. However, "[a] security deposit has been defined as money a tenant deposits with a landlord as security for the tenant's full and faithful performance of the lease terms." *Starr v. Gay*, 354 Ill. App. 3d 610, 613 (2004); see also 765 ILCS 710/1 (West 2018) (the Security Deposit Return Act defines a security deposit as the money received "from a lessee to secure the payment of rent or to compensate for damage to the leased premises"); 765 ILCS 715/1 (West 2018) (same, under the Security Deposit Interest Act).

¶ 60     Our supreme court has previously observed:

"If a landlord requires a security deposit, the landlord is required to pay the tenant interest on that deposit. If he fails to do so, he is liable to the tenant for the damages specified in the ordinance. *There are no exceptions*." (Emphasis added.) *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 9-10 (2001).

¶ 61     The supreme court emphasized that "[t]he city council has elected to address this problem by imposing an absolute duty to pay the interest they owe and conferring on tenants the right to recover double the amount of their security deposit when that duty is breached." *Lawrence*, 197 Ill. 2d at 10. "[I]t is not this court's function to second-guess the city council's judgment in such matters." *Lawrence*, 197 Ill. 2d at 10. In *Lawrence*, the supreme court rejected the imposition of a willfulness requirement into the ordinance.[8] *Lawrence*, 197 Ill. 2d at 10. While we may appreciate the quandary in which a landlord may find itself upon realizing that it had, perhaps inadvertently, breached the ordinance, it is not this court's function to second-guess the city council's judgment or to sanction the creation of an exception, such as this Return Agreement, which attempts to circumvent the ordinance. *Cf. Dickson v. West Koke Mill Village Partners*, 329 Ill. App. 3d 341, 347 (2002) (reversing a grant of summary judgment dismissing a tenant's claim under the Security Deposit Interest Act, despite the landlord's return and tenant's acceptance of the security deposit with interest, where the landlord failed to tender "the full amount alleged to be owed under the Act"); *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1082 (1988) (a corporate defendant "cannot be allowed to use *pro forma* contracts that blatantly disregard the

---

[8]Unlike our municipal RLTO, the state-wide Security Deposit Interest Act does have a willfulness requirement for its penalties. *Dickson v. West Koke Mill Village Partners*, 329 Ill. App. 3d 341, 346-47 (2002) (discussing 765 ILCS 715/2 (West 1996)).

mandate of" Illinois law, and "thereby avoid the legislative mandate that seeks to protect parties in an inferior bargaining position").

¶ 62     For the foregoing reasons, I must respectfully dissent from the majority's decision to affirm the dismissal of counts I and II. However, I concur in the majority's decision to remand for further proceedings and to reverse the dismissal of counts III and IV. Thus, I concur in part and dissent in part.

2022 IL App (1st) 211189

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CH-04073; the Hon. Eve Reilly, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey Sobek, of JS Law, of Chicago, for appellant. |
| **Attorneys for Appellee:** | James V. Noonan, Mitchell A. Lieberman, and Pamela J. Leichtling, of Noonan & Lieberman, Ltd., of Chicago, for appellees. |